# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | **Criminal Case No. 19-223 (TJK)** |
| | : | |
| JEREMIAH McCRIMMON, | : | |
| | : | |
| Defendant. | : | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits the following memorandum in support of its request and recommendation that the Court sentence the defendant on Count One, Kidnapping, to 240 months imprisonment, concurrent to Count Two but consecutive to Count Six; on Count Two, Interstate Violation of a Protection Order Causing Travel of Victim, 33 months imprisonment concurrent to Count One and Count Six; and on Count Six, First Degree Sexual Abuse, 144 months imprisonment, consecutive to Count One but concurrent to Count Two, for a total sentence of 384 months imprisonment, followed by a substantial period of Supervised Release, and lifetime sex offender registration. As detailed below, this sentence is the low-end of the applicable Guidelines, and is warranted based on the defendant's atrocious conduct.

## FACTUAL BACKGROUND

Sometime around August of 2015, the victim, ("A.S.A."), her mother, and stepfather moved in with A.S.A.'s grandmother in her home in Capitol Heights, Maryland ("Capitol Heights home"). The defendant was married to the adopted sister of A.S.A.'s stepfather. In approximately July of 2016, the defendant and his wife moved into the Capitol Heights home. In 2017, when A.S.A. was

1

approximately 11 years old, on at least three occasions, the defendant sexually assaulted A.S.A. by touching her buttocks, genital area, and breasts. After the last incident in November of 2017, A.S.A. reported the sexual assaults to her mother, who then reported the abuse to the Prince George's County Police Department. As a result, A.S.A.'s mother sought a protection order to prevent the defendant from having any further contact with A.S.A. On November 10, 2018, a temporary protection order was issued by a judge of the District Court of Maryland for Prince George's County. The protection order ordered the defendant to stay away from and have no contact, by any means, with A.S.A. and her mother and not abuse, threaten to abuse, and/or harass A.S.A. and her mother. In January of 2018, a Final Protection Order was signed by the defendant acknowledging he understood the terms and requirements. The protection order was valid and in effect on December 18, 2018.

On December 18, 2018, shortly before 3:00 p.m., A.S.A. was walking to her grandmother's house in Maryland after school. As A.S.A. walked by the Oakcrest Tower Apartment Complex located at 2021 Brooks Drive, Capitol Heights, Maryland, the defendant, who was hiding and waiting in the parking lot near his parked car for the victim, approached A.S.A. The defendant surprised A.S.A., grabbed her and forced her into the backseat of his vehicle. The defendant then handcuffed A.S.A.'s wrists and took her cellular telephone and removed the battery.

The defendant drove A.S.A. into Washington D.C. He told her he had a gun, which she believed he possessed. A.S.A. asked the defendant if the defendant was going to hurt her, and the defendant responded that he wanted to talk to A.S.A. about the protection order and how it was "messing up" his life. Specifically, at the time the defendant was registered as a paid unarmed Special Police Officer, and the Maryland protection order was complicating his background check

for a firearm carrying permit.  Eventually the defendant drove A.S.A. to an abandoned family member's home in Southeast, Washington, D.C.

Once inside the dark and filthy abandoned home, the defendant removed the handcuffs from A.S.A.'s wrists and informed her that in order for him to release her, she would have to show him her buttocks, perform oral sex on him, and make him ejaculate.  The defendant grabbed A.S.A.'s hair and forced A.S.A. to perform oral sex on him by forcing her mouth on his penis.  Subsequently, the defendant also penetrated A.S.A.'s vulva with his penis.  During this rape, A.S.A. specifically told the defendant that his act was painful.  The defendant then masturbated himself and touched A.S.A.'s genitalia with his fingers.  The defendant ejaculated inside A.S.A.'s vulva.  Afterward, the defendant ordered A.S.A. to put her clothes on.  He, then drove A.S.A. back to where he picked her up at the Oakcrest Tower Apartment Complex in Prince George's County, Maryland, and released A.S.A.  The defendant held A.S.A. captive for more than two hours.  At the time of the forced rape, A.S.A. was, as the defendant knew, 13 years old and the defendant was approximately 21 years old.

Upon her release from the abduction, A.S.A. immediately ran to her grandmother's home and reported the crime to her family.  She was then transported to Children's National Medical Center.  Detectives from the Metropolitan Police Department (MPD) Youth and Family Services Division were notified that A.S.A. was at Children's National Medical Center and had reported that the defendant had kidnapped and sexually assaulted her, and that she was obtaining medical treatment and a forensic examination.

A.S.A. told MPD detectives that the defendant abducted her and drove a Ford Crown Victoria that was painted red and gray like a taxicab.  MPD detectives obtained security video footage from the Oakcrest Tower Apartment Complex which showed the defendant's vehicle (red

and gray Ford Crown Victoria) entering the complex parking lot at 2:46 p.m. and backing into a parking spot.  The defendant is then visible crouching down by the passenger side of the vehicle while A.S.A. walked through the parking lot.  Shortly after A.S.A. was visible in the footage, the defendant stood up, approached A.S.A. and, at 2:50 p.m., grabbed her arm.  The footage captured the defendant forcing A.S.A. into the backseat of his vehicle, enter the driver's seat of the vehicle, and the car pulling out of the parking lot.  More than two hours later, the defendant's vehicle is visible in the surveillance footage driving through the parking lot, and A.S.A. is seen getting out of the backseat of the car (at 5:36) p.m.  A.S.A. ran to her grandmother's residence (at 5:38 p.m.).

On December 19, 2018, A.S.A. was medically and forensically examined by a nurse who specializes in conducting sexual assault examinations at Children's National Medical Center in Washington, D.C.  During the course of the examination, multiple swabs were taken of A.S.A.'s body, including her genital areas.  DNA testing revealed that the defendant's DNA profile matched the male profile deduced from the sperm fraction of several swabs taken from A.S.A.'s body including the external genitalia swabs, vaginal swabs, thigh swabs, and perineum swabs.  The probability of randomly selecting an unrelated individual with this DNA profile is 1 in 26 nonillion of the U.S. African American population.

On January 11, 2019, the defendant was located in Washington D.C., and placed under arrest pursuant to the outstanding arrest warrant.  During a custodial interview with the defendant, who waived his *Miranda* rights, the defendant stated that on December 18, 2018, he observed A.S.A. walking in the 2000 block of Brooks Drive, Capitol Heights, Maryland.  The defendant advised he approached A.S.A., grabbed her by the arm and had her get in the backseat of his vehicle where he placed A.S.A. in handcuffs.  The defendant reported he drove to a residence in Southeast,

Washington D.C., removed the handcuffs from A.S.A., and had A.S.A. perform oral sex on him. He also stated that when he inserted his penis in A.S.A.'s vulva, she complained that she was experiencing pain.

On January 12, 2019, members of MPD located the defendant's vehicle, a red and gray Ford Crown Victoria, parked in the 3200 block of Wheeler Road, Southeast, Washington D.C. A search pursuant to a valid search warrant revealed a silver .22 caliber firearm loaded with one cartridge in the chamber and a magazine containing two cartridges; a black bag containing baby oil, duct tape, a radio, a pink-handled knife, and a smaller bag containing eighty-nine cartridges; and a pair of silver handcuffs and a silver handcuff key.

On January 23, 2020, a Superseding Indictment was returned charging the defendant with: Count One, Kidnapping, in violation of Title 18, United States Code, Sections 1201(a)(1), 1201(g)(1); Count Two, Interstate Violation of Protection Order, Causing Travel of Victim, in violation of Title 18, United States Code, Sections 2262(a)(2), 2262(b)(3); Count Three, Kidnapping, in violation of Title 22, District of Columbia Code, Section 2001 (2001 ed.); Count Four, First Degree Sexual Abuse, in violation of Title 22, District of Columbia Code, Sections 3002(a)(1), 3002(a)(2) (2001 ed.); Count Five, First Degree Child Sexual Abuse, in violation of Title 22, District of Columbia Code, Section 3008 (2001 ed.); Count Six, First Degree Sexual Abuse, in violation of Title 22, District of Columbia Code, Sections 3002(a)(1), 3002(a)(2) (2001 ed.); Count Seven, First Degree Child Sexual Abuse, in violation of Title 22, District of Columbia Code, Section 3008 (2001 ed.); Count Eight, Third Degree Sexual Abuse, in violation of Title 22, District of Columbia Code, Sections 3004(1), 3004(2) (2001 ed.); Count Nine, Second Degree Child Sexual Abuse, in violation of Title 22, District of Columbia Code, Section 3009 (2001 ed.);

Count Ten, Third Degree Sexual Abuse, in violation of Title 22, District of Columbia Code, Sections 3004(1), 3004(2) (2001 ed.); and Count Eleven, Second Degree Child Sexual Abuse, in violation of Title 22, District of Columbia Code, Section 3009 (2001 ed.).

After the defendant pled not guilty and requested a jury trial, on September 27, 2021, a jury was selected.  On September 28, 2021, opening statements were to commence, but the defendant informed the Court that he wanted to plead guilty.  On September 28, 2021, the Court accepted the defendant's guilty plea to:  Count One, Kidnapping, in violation of Title 18, United States Code, Sections 1201(a)(1), 1201(g)(1); Count Two, Interstate Violation of Protection Order, Causing Travel of Victim, in violation of Title 18, United States Code, Sections 2262(a)(2), 2262(b)(3); and Count Six, First Degree Sexual Abuse (alleging forced vaginal rape), in violation of Title 22, District of Columbia Code, Sections 3002(a)(1), 3002(a)(2) (2001 ed.).

On November 29, 2021, the Court ordered the defendant to undergo a presentence evaluation as authorized under 18 U.S.C. § 3552(b).  On January 15, 2022, Dr. Travis D. Fowler provided a report and assessment, *see* Report dated 1/15/22.  At a February 9, 2022 status conference in this matter, the defendant requested a second presentence evaluation under 18 U.S.C. § 3552(b), which the government did not oppose, and the Court granted the defendant's request. On April 6, 2022, Dr. Shauna Keller provided her report and assessment, *see* Report dated 4/6//22.

**Psychosexual Evaluation and Risk Assessment**



███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████████

**Victim Impact Statement**

██████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████

## SENTENCING RECOMMENDATION

Sentencing Guidelines

The government is in agreement with the United States Sentencing Guidelines (U.S.S.G.)

calculations utilized by United States Probation Officer Kelli Willett in the Pre-Sentence Report

(PSR). Ms. Willett, utilizing the U.S.S.G as to Count One and Count Two, calculated the defendant's total criminal history score as zero with a Criminal History Category as I. *See* PSR ¶ 43. Additionally, with respect to Count Six, Ms. Willett, utilizing the District of Columbia Superior Court Sentencing Guidelines, calculated the defendant's total criminal history score as 0 which establishes a Criminal History Score A. *See* PSR ¶ 45.

With respect to the counts the defendant pled guilty to, the PSR correctly calculates the Guidelines range as follows:

Count One: 188-235 months imprisonment (mandatory 240 months). *See* PSR ¶ 112.

Count Two: 33-41 months imprisonment. *See* PSR ¶ 112.

Count Six: 144-288 months imprisonment. *See* PSR ¶ 112.

For the reasons set forth below, the government recommends that the Court sentence the defendant on Count One, Kidnapping, to 240 months imprisonment, concurrent to Count Two but consecutive to Count Six; on Count Two, Interstate Violation of a Protection Order Causing Travel of Victim, 33 months imprisonment concurrent to Count One and Count Three; and on Count Six, First Degree Sexual Abuse, 144 months imprisonment, consecutive to Count One but concurrent to Count Two, for a total sentence of 384 months imprisonment, followed by a substantial period of Supervised Release and lifetime sex offender registration.

In sentencing the defendant, all of the applicable factors set forth in Title 18 United States Code, Section 3553(a), should be considered by this Court. *See United States v. Gall,* 128 S.Ct. 586 (2007). These factors include the nature and circumstances of the offense and the history and characteristics of the defendant (18 U.S.C. Section 3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford

adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (18 U.S.C. Section 3553(a)(2)); the Sentencing Guidelines and related Sentencing Commission policy statements (18 U.S.C. Sections 3553(a)(4) and (a)(5)); and the need to avoid unwarranted sentence disparities (18 U.S.C. Section 3553(a)(6)).

#### Nature and Circumstances of the Offense

The defendant's conduct is nothing short of atrocious, ruthless, and incredibly harmful, which will leave A.S.A. and her family with life-long trauma and scars.  It is incomprehensible and difficult to explain what the more than two hours of A.S.A.'s life was like on the afternoon of December 18, 2018.

The defendant's actions were also premeditated and deliberate.  The surveillance footage shows that he arrived at the apartment complex that was (as he was well aware) along A.S.A.'s normal walking route home from school well in advance of A.S.A.'s arrival in the area.  He did this for the purpose of confronting her by surprise and attacking her.  In addition, and as outlined above, this was not the first time the defendant had sexually assaulted A.S.A.  He had done so on several prior occasions in Maryland.

More specifically, and as the Court is aware from pre-trial motions filed in this case, around October of 2017 the defendant sexually touched A.S.A.  At that time, A.S.A was approximately 11 years old.  A.S.A. and her family were living with her grandmother, as was the defendant, his wife, and young children.  Inside A.S.A.'s grandmother's home and away from others the defendant sexually, and criminally, touched A.S.A. on multiple occasions.  More specifically, he touched her breasts while she was in the kitchen, on another occasion the defendant tried to sexually assault

10

A.S.A. by attempting to touch her genitalia with his hand, and on another occasion the defendant came up from behind A.S.A. covered her mouth and tried to raise A.S.A.'s skirt.  Shortly after escaping, A.S.A., who fought off the defendant's advances, reported the defendant's conduct to her parents.

In November of 2017, after reporting the above crimes to law enforcement, a protection order was signed by a Maryland judge requiring the defendant to have no contact with A.S.A.  The defendant also signed the protection order, acknowledging that he knew he was legally prohibited from contacting A.S.A.  This protection order was in place on December 18, 2018, when the defendant committed the above-described heinous conduct, and is the basis of the guilty plea to Count Two.  *See* Factual Proffer signed by the defendant on September 28, 2021, Document 77, at 4-5.  With the protection order in place, and the defendant signature affirming he understand he was subject to immediate arrest and prosecution for a violation of the protection order, A.S.A. and her family had some semblance of security and comfort.  Unfortunately that safe feeling was short-lived.

December 18, 2018, was a week before Christmas.  A.S.A. was no different than any other 13-year-old child.  She was attending 7th grade and enjoyed science, music and playing with her friends.  It was the holiday season.  At that time, the defendant had been working for a few months as a special police officer at St. Elizabeth's Hospital in Southeast Washington, D.C.  He planned to obtain a firearm carrying permit.  The defendant was rejected from obtaining the carrying permit because of the protection order.

At the time of the rape A.S.A. had not seen or spoken to the defendant since the last night he sexually touched her in the Fall of 2017.  On December 18th A.S.A. finished school and walked

the approximate one mile from school towards her grandmother's home.  Unbeknownst to A.S.A. the defendant, who was angry that the protection order was preventing him from obtaining a carrying permit, was lying in wait, hiding in the parking lot where A.S.A. walked on her way home from school.  The defendant was crouched down by his car waiting for A.S.A. to walk through the parking lot.  The defendant ambushed A.S.A., grabbed her arm, and dragged her to his waiting car. *See* Exhibit 2, photograph from surveillance from parking lot.  There the defendant's reign of terror and harm began.

The defendant forced A.S.A. into the back seat of his car and handcuffed her.  S*ee* Exhibit 3, a set of handcuffs recovered during a search warrant of the defendant's vehicle.  Thirteen-year-old A.S.A. was confused and terrified because of the previous sexual assaults and knowing the defendant was violating the protection order.  She verbally protested by asking the defendant if he was going to hurt her.  She feared for her life, but didn't flee, and didn't scream, because she was understandably afraid the defendant would escalate his violence to her.

While being held against her will and fearing for her life, the defendant took A.S.A.'s cellular telephone and removed the battery - taking away her lifeline to guarantee that she could not call anyone for help and that no one , no one could contact or locate A.S.A.  He had her isolated and scared – exactly where he wanted her.

While A.S.A. was restrained with the handcuffs in the backseat of the car and petrified, the defendant told her that the restraining order is ruining his career . . . and he wanted to be a police officer.  To increase her fear and ensure total control and compliance he told A.S.A. that he had a gun.  Notably, during a search of the  defendant's car pursuant to a warrant, a gun was recovered.

*See* Exhibit 4, photograph of gun recovered from the defendant's vehicle.  The defendant also said he merely wanted to discuss the restraining order with A.S.A.

The defendant then told A.S.A. that he needed to go to a family member's home (2226 Hunter Place, Southeast, Washington, D.C) to retrieve the handcuff key.  This is an abandoned home of a family member where the defendant spent time growing up.  This was a ploy to get A.S.A. inside an isolated and vacant location so that he could rape her a punishment for her reporting the prior assault and getting a restraining order against him. The defendant opened the front door and ordered A.S.A. to enter with him.  Fearing for her life, A.S.A. complied.

In this cold, dark, disgusting abandoned home, which was full of trash, the defendant forced A.S.A. up to one of the second floor bedrooms.  *See* Exhibit 5 and 6, photograph of second floor bedroom.  The defendant removed the handcuffs from A.S.A's wrists.  He had the handcuff key in his pocket the whole time.  The defendant demanded that A.S.A. remove her pants so he could see her buttock and he, then, grabbed her buttock.  But that did not satisfy the defendant's need for revenge.  He ordered her to perform oral sex on him and make him ejaculate  He lied and said he would release her if she did this.  When she resisted, the defendant grabbed A.S.A.'s hair and forced her mouth onto his penis.  By this point, the young victim was in total survival mode and complied with the defendant's demands.  Compounding the nightmare, the defendant then forcibly inserted his penis into her vagina.  A.S.A. was beyond terror-stricken.  A.S.A. cried and told the defendant that the rape was hurting her.  The defendant put his fingers inside his vagina while he masturbated himself.  Indifferent to A.S.A.'s physical or emotional state, as the defendant was about to ejaculate he forced his penis inside A.S.A.'s vulva again and ejaculated.  The defendant then ordered A.S.A.

to get dressed and, as if nothing had occurred, he directed her out of the abandoned residence and into his car.

Sometime after 5:30 p.m., the defendant released A.S.A. in the same area from where he abducted her.  *See* Exhibit 6, photograph of A.S.A. fleeing from the defendant's car.  A.S.A. ran to her grandmother's home where A.S.A.'s family members were grief-stricken because they had no idea where A.S.A. was, and telephone calls and text messages from family members went unanswered (because the defendant had removed the battery of her cell phone).  She immediately reported being kidnapping and raped to her parents, and her parents took her to Children's National Medical Center.  A.S.A. obtained medical treatment and a forensic examination was conducted.  More specifically, at Children's Hospital, A.S.A. was subjected to medical examinations of her intimate areas her vaginal area.  This was not a pleasant experience for a 13-year-old child.  She was required to take multiple medications to prevent sexually transmitted diseases and other serious diseases, some of which had severe side effects.  As part of the examination, swabs were taken around and in her vagina.

MPD detectives then began their investigation into the kidnapping and rape.   On January 11, 2019, a D.C. Superior Court judge issued an arrest warrant for the defendant.  That day, the defendant was located at his place of employment at Saint Elizabeth's Hospital, where he worked as an unarmed special police officer.  The defendant was placed under arrest, and transported to MPD for processing.  A DNA sample was taken from the defendant.  During the custodial post-*Miranda* interview and after repeatedly denying the criminal conduct, the defendant admitted to kidnapping and sexually assaulting A.S.A.

This is one of the most horrific crimes this Court will see, with A.S.A. suffering life-long trauma and harm.  She continues to receive necessary treatment from mental health professions, deals with self-esteem issues, and suffers from bouts of deep depression.  Based on their family relationship, A.S.A. initially thought the defendant was someone who would care for and protect her.  Never did she imagine that it was the defendant who she needed protection from.  In sum, this nature and circumstances of this offense warrant the sentence recommended.

<u>Harm to the Victim</u>

A.S.A. will live with the emotional trauma from the defendant's depraved conduct for the rest of her life, re-living the kidnapping and sexual assault, and seeking treatment for a very long time.

Based on the research and literature in this area, tragically A.S.A. likely will feel the impact of the defendant's behavior for the rest of her life.  Child sexual abuse ("CSA") is an epidemic plaguing a disproportionate amount of the nation's children. Broadly defined as any sexual activity perpetrated against a minor by threat, force, intimidation, or manipulation, CSA is experienced by as many as 60% of adults at some point during their childhood.  *See* Raymond E. Webster, *Symptoms and Long-Term Outcomes for Children Who Have Been Sexually Assaulted,* 38 PSYCHOL. IN THE SCH. 533, 534 (2001) [hereinafter Webster].  Survivors of CSA often experience

intense feelings of guilt and shame, which can affect their capacity to develop meaningful present and future relationships and can result in more guarded and cautious interactions with others, especially among adults. Webster, *supra,* at 537.

The alarmingly high prevalence of CSA has serious (1) short-term and (2) long-term implications on the development of children, as A.S.A. has already experienced.  Short-term effects of CSA include what the victim displays or experiences during and/or immediately following the abuse and its disclosure.  *See* Brenda J. Vander Mey & Ronald L. Neff, *Adult-Child Incest: A Review of Research and Treatment,* 17 ADOLESCENCE 717, 726 (1982).  Survivors of CSA often experience symptoms associated with post-traumatic stress disorder ("PTSD"), including general agitation, behavioral disorganization, vague and frightening nightmares or actual attempts to reenact the sexual assault with peers and/or adults.  Webster, *supra,* at 537.  According to one study, around 50% of children who experienced CSA met either partial or full criteria for PTSD.  *Id.* PTSD has a disruptive effect on a child's behavior and places him/her at considerable risk for prolonged dysfunction.  *See* Elizabeth Oddone Paolucci et al., *A Meta-Analysis of the Published Research on the Effects of Child Sexual Abuse,* 135 J. OF PSYCHOL. 17, 18 (2001).

Long-term effects of CSA become prevalent long after the abuse occurs.  Webster, *supra,* at 537-38.  CSA survivors often exhibit higher incidence of mental health problems as adults, including depression, anxiety disorders, eating disorders, suicidal behavior and substance abuse. *See* Brian Draper et al., *Long Term Effects of Childhood Abuse on the Quality of Life and Health of Older People: Results from the Depression and Early Prevention of Suicide in General Practice Project,* 56 J. OF THE AM. GERIATRICS SOC'Y 262, 262 (2008); Shanta R. Dube et al., *Long Term Consequences of Childhood Sexual Abuse by Gender of Victim,* 28 AM. J. OF PREVENTIVE MED.

430, 430-35 (2005).  Studies have found that 26% of women who experienced CSA suffered from severe chronic anxiety, and 56% of women had a history of previous suicide attempts.  Joseph Beitchman et al., *A Review of the Long-Term Effects of Child Sexual Abuse, supra*, 106-07.  Furthermore, PTSD in victims of CSA often continues into adulthood—one study reported that 37.5% of adult survivors of CSA met the diagnostic criteria for lifetime PTSD. Webster, *supra*, at 540.

Another commonly cited long-term effect of CSA is an increased likelihood of revictimization, meaning that survivors of CSA are more likely to experience abusive relationships and/or be raped.  *Id.* at 108.  Specifically, studies have found that 49% of victims reporting CSA were victims of domestic violence as adults and around 65% of women reporting CSA were victims of subsequent rape or attempted rape.  *Id.*  Several studies have also found evidence suggesting that CSA of girls can produce several long-term negative physiological changes as they mature into adulthood.  Webster, *supra,* at 541.  From these studies and documented effects of CSA, it is apparent that CSA has serious, intense and pervasive implications on the development of children.

<u>Defendant's History and Characteristics</u>

The defendant is 24 years old and, at first blush, appears to have lived a law-abiding life.  However, the defendant has a history of sexually assaulting A.S.A.  As described above, in the fall of 2017, when A.S.A. was 11 years old, the defendant sexually assaulted her on a number of occasions by touching her in a sexual manner, all of which did not escalate further because A.S.A. fought off the defendant's advances and reported the crime to her family.  A protection order was put in place, the defendant violated the protection order and the law by committing the instant offense.  Further, at the time of the execution of the search warrant on the defendant's car shortly

17

after his arrest, the defendant possessed a loaded firearm and ammunition. Because there was a pending restraining order against him the defendant was not lawfully permitted to possess a firearm. Specifically, as part of the January 2018 Final Protection Order signed by the defendant, he acknowledged that he understood that it was a federal offense to "possess . . . any firearm or ammunition while subjected to a protection order . . . [and] SHALL immediately surrender all firearm(s) to law enforcement . . . ." The defendant had no regard for the law, and has a history of violating the law with acts that did not (before this offense) result in an arrest or conviction.

Further, at each step of the criminal process the defendant lied, minimized, and failed to accept responsibility for his horrendous conduct, and only acknowledged parts of his conduct when faced with no other choice. During his custodial interview upon his arrest, the defendant first denied the criminal conduct. He has blamed A.S.A. for initiating the offense, and only after faced with incriminating evidence from MPD detectives did he admit to the kidnapping and sexual assault.





<u>Need to Protect the Community</u>

The Court should impose a sentence that serves to protect the community against wrongdoers, and specifically that protects against harm done to children. The defendant represents a significant threat to the citizens and children of the District of Columbia, and his conduct, lack of appreciation for his actions, and his repeated explanation that A.S.A. caused the events should give this Court great concern.

The defendant is dangerous as evidenced by the nature and circumstances of the offenses he committed. First, the sexual assaults did not occur in isolation, but rather began in the Fall of

19

2017, and ended with the kidnapping and forced rape of A.S.A. on that day.  The defendant's rape was premeditated and motivated by anger that the protective order A.S.A. had secured stopped his professional advancement.  Further, the defendant told A.S.A. he had a gun, which was recovered in his car shortly after the attack, presumably to increase her fear of him.  He also restrained the victim by handcuffing her, a demeaning and utterly terrorizing act.  The defendant's actions were deliberate and calculated.  He targeted A.S.A. because he knew she was vulnerable and would never suspect that the defendant would abduct her in broad daylight while a final protection order was in place.  His acts are even more incredible given that he has two young children of his own.  For all these reasons, and others, the defendant is dangerous and the Court should protect the community from the defendant.

### Need to Deter

Finally, the Court must impose a sentence that deters potential criminal conduct of the defendant and others.  The Court should send a message to this defendant and the community that this reprehensible criminal conduct will be treated extremely seriously by the criminal justice system.

## **CONCLUSION**

Consideration of the factors set forth in Section 3553(a) leads to the conclusion that a sentence of 384 months imprisonment, which represents the low-end of the Guidelines, is warranted and just.  The Court should sentence the defendant as follows:  Count One, Kidnapping, to 240 months imprisonment, concurrent to Count Two but consecutive to Count Six; on Count Two, Interstate Violation of a Protection Order Causing Travel of Victim, 33 months imprisonment concurrent to Count One and Count Three; and on Count Six, First Degree Sexual Abuse, 144 months imprisonment, consecutive to Count One but concurrent to Count Two, for a total sentence

of 384 months imprisonment, followed by a substantial period of Supervised Release and lifetime

sex offender registration.  The government has considered what would be an appropriate sentence

for the defendant, balancing the seriousness of the offense, the need for just punishment, the threat

the defendant poses to the community, and affording adequate deterrence to criminal conduct, based

upon a consideration of all of the factors set forth in Title 18, United States Code, Section 3553(a).


Respectfully submitted,

Matthew M. Graves
United States Attorney
D.C. Bar No. 481052


_____

Kathleen Kern
VA Bar. No. 84048J
kathleen.kern@usdoj.gov
Assistant United States Attorney
Sex Offense and Domestic Violence Section

Anthony Scarpelli
D.C. Bar No. 474711
anthony.scarpelli@usdoj.gov
Assistant United States Attorney
Violent Crime and Narcotics Trafficking Section

601 D Street, N.W.
Washington, D.C. 20530
(202) 252-7505 (Kern)
(202) 252-7707 (Scarpelli)

**Exhibit 1**
**Victim Impact Statement**





**Exhibit 2**
**Surveillance Photograph of Defendant Abducting A.S.A.**



**Exhibit 3**
**Photograph of Handcuffs Recovered from the Defendant's Vehicle**





**Exhibit 4**
**Photograph of Firearm and Ammunition Recovered from the Defendant's Vehicle**



**Exhibit 5**
**Photograph of Bedroom with Mattress**



**Exhibit 6**
**Photograph of Bedroom where Sexual Assault Occurred**



**Exhibit 7**
**Surveillance Photograph of Victim Fleeing**

